CURTIS BROTHERS v. S. A. KELLEY ET AL.

Decided December 15, 1900.

**1. Taxation—Personal Property—Sale of Cattle.**

Where defendant, in the fall of 1897, made an absolute sale to his partner of his interest in a herd of cattle, and such partner agreed, as part of the consideration, to deliver on July 1, 1898, to defendant 5000 yearlings, to be taken from such herd, and to be branded not later than October 15, 1897, it was error to assess the taxes on such 5000 yearlings against defendant as belonging to him on January 1, 1898, as he did not own them then, nor until after their delivery to him in July of that year.

**2. Same—Parol Evidence to Contradict Written Instrument.**

The contract for the sale of defendant's interest in the cattle being in writing, parol evidence was not admissible to show that it was simply a division of the partnership property in and by which defendant retained 5000 yearlings to be kept for him by his partner until the next July.

APPEAL from Borden. Tried below before the Hon. W. R. SMITH.

*Earnest & Sheppard,* for appellants.

*E. R. Yellott,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was begun in the District Court of Borden County on the 13th day of March, 1899, by J. W. Curtis, J. O. Curtis, and T. A. Curtis, who composed the firm of Curtis

Bros., cattle breeders and dealers, against Borden County and S. A. Kelley, sheriff and ex officio tax collector of said county, to enjoin them from collecting a tax of $680, and 10 per cent penalty thereon, alleged to be illegally and wrongfully assessed against them for the year 1898 on 5000 head of yearling cattle located in Borden County, and placed on the unrendered roll of personal property without their knowledge or consent.

The sheriff and county filed a joint answer, consisting of a general denial, and specially by way of cross-action, in effect, that one E. Wilson and J. W. Curtis were, on October 14, 1897, equal partners in a large stock of cattle, ranch, and ranch outfit located in said county, and that on said day they divided same; that in this division Wilson canceled and gave up to said Curtis certain notes he held against him, and gave his own note to Curtis for $5000, payable December 1, 1898; that in consideration thereof Wilson received as his share in the division all the cattle belonging to the firm except 5000 yearlings of the branding of 1897, if there should be that many, but if less than 5000, then the brand for that year; that the title to said calves was thus and at that time transferred to said Curtis, but, the calves being too young to be separated from their mothers, it was agreed they should remain with the rest of the cattle as the property of Curtis until the spring of 1898; that soon afterwards J. W. Curtis transferred said calves to the firm of Curtis Bros. So that on the 1st day of January, 1898, they were the property of the said Curtis Bros., located in Borden County, and subject to assessment for taxes in said county, as the property of Curtis Bros.; that they were so legally assessed, and that the said taxes amounted to $684, and a penalty is claimed thereon of $68.40. The pleading concludes: "That said taxes and penalty are long since due and were due before the filing of this suit. That no part of said tax or penalty has been paid. Wherefore the defendants pray for judgment for said tax and penalty; that 10 per cent damages be allowed on said tax and penalty, for costs and for general relief."

The plaintiffs on October 24, 1899, took a nonsuit, but the case was continued on the docket to try the defendants' cross-action as above set out, and plaintiffs filed a general demurrer thereto, and general denial, and specially answered that on October 14, 1897, J. W. Curtis sold all his interest in the said cattle, ranch, ranch outfit, etc., to Wilson, and as part of the consideration therefor Wilson agreed and bound himself to deliver to said Curtis 5000 yearlings—one-half heifers and one-half steers—on or before July 1, 1898, if so many were branded from said stock of cattle, but if not, then the calf brand of 1897, and that afterwards J. W. Curtis transferred said contract to Curtis Bros., and they, on February 24, 1898, transferred it to B. T. Ware; that by said contract of sale the said J. W. Curtis parted absolutely with all his title and interest, legal or equitable, in all of said stock of cattle, and they were delivered to the said Wilson at the date of said contract, and the said Wilson was bound thereby to deliver to J. W. Curtis the number of yearlings mentioned in said contract on or before July 1, 1898, and

that the title to said yearlings was not in Curtis Bros. on January 1, 1897, but remained in said Wilson.

The case was tried by the court without a jury, and judgment was rendered in favor of Borden County only for the taxes and penalty as claimed, aggregating $752.40, and adjudged that Kelley take nothing by his cross-action, and from this judgment Curtis Bros. have appealed on an agreed statement of facts.

On the trial of the cause the appellees introduced the following contract: "This agreement, made and entered into this the 14th day of October, 1897, by and between J. W. Curtis of the county of Hall and State of Texas, party of the first part, and E. Wilson, of the county of Jackson, State of Missouri, party of the second part: Witnesseth, that J. W. Curtis, party of the first part, has this day contracted and by these presents does sell, assign, transfer, and deliver to E. Wilson, party of the second part, all of the right, title, and interest of said Curtis in the following personal property, to wit: An undivided one-half interest in all cattle branded "MK" on left side and marked thus, • . Also an undivided one-half interest in and to all the cattle branded on left side, mostly, and ear marked thus, • . Also an undivided one-half interest in and to all the cattle branded T on right side, and in various ear marks. Some of said described cattle may have other brands and marks, but the above brands are considered the title brands, and carry the title to said property. Also an undivided one-half interest in all calves of 1897, branded • on left jaw and C on left side. Also an undivided one-half interest in and to all cattle branded "C" on left side and thigh. Also an undivided one-half interest in and to all horses, mules, wagons, harness, camp outfits, plows, tools, leases, and all other property belonging to, upon, and used in connection with the operation and running what is known as the Magnolia ranch, situated in Borden, Garza, and adjoining counties, in the State of Texas, and all of the foregoing described property now being on the above described ranch.

"In consideration of and for payment of said undivided one-half interest in and to the above described cattle, horses, mules, wagons, saddles, harness, camp outfits, plows, tools, leases, and all other property belonging to, upon, and used on said Magnolia ranch, the said E. Wilson, party of the second part, has this day executed and delivered to J. W. Curtis, party of the first part, his promissory note of even date herewith for the sum of five thousand dollars, payable to the order of J. W. Curtis, on or before December 1, 1898, with interest from June 1, 1898, at the rate of 8 per cent per annum. Also as a further consideration, said E. Wilson agrees to cancel and surrender certain promissory notes, as follows, to wit: One note dated December 1, 1896, for $12,133.79, due on or before August 1, 1897, with interest at 9 per cent. One note dated February 15, 1896, for $41,762.50, due January 1, 1897, with interest at 10 per cent; one note dated December 1, 1896, for $300, due August 1, 1897, with interest at 9 per cent. Which said notes are signed by J. W. Curtis and J. O. Curtis, upon which notes there are credits aggregating $23,977.26, also an open account of about $8000,

the balance of all of which notes and account are now due said E. Wilson from J. W. Curtis and unpaid, and which said notes and account are this day canceled, marked "paid," and delivered to said Curtis. Also as a further consideration for the sale of said property, the said E. Wilson, party of the second part, agrees to deliver to said J. W. Curtis, on or before July 1, 1898, five thousand yearlings, one-half of which are to be heifers and one-half steers, all branded "C" on left side and • on left jaw, and to be taken from the herd at Magnolia ranch, and none of which yearlings are to be branded later than October 15, 1897, and are to be delivered at the Magnolia ranch in two lots, and when so delivered are to be branded at the expense of both parties, in the brand used by J. W. Curtis, or his order, and in event there is not 5000 yearlings in said brand of said herd at the time of delivery, then said Curtis agrees to receive the branding of 1897, in lieu of said 5000 yearlings aforesaid, except the bull calves branded in 1897, and in full satisfaction of said agreement to deliver same. It is further agreed that in the event any cattle are killed or crippled in branding, the loss of same is to be borne by the said party of the first part. This contract is executed in duplicate, and each party hereto has a copy. In witness whereof we have hereunto set our hands and seals the day and year above stated.                                                 J. W. CURTIS,
                                                                    "E. WILSON."

After introducing this contract the appellees proved by Wilson, over the objections of appellants, that, in effect, the contract was simply a division of the partnership property, whereby he took the stock of cattle, and J. W. Curtis retained 5000 head of yearlings which were to run with their mother cows until the next July, and then to be turned back to Curtis. Also oral evidence was introduced of a mortgage which Curtis Bros. had executed in the fall of 1897 to Drum, Flato & Co. on said yearlings to secure a loan of $75,000, but which was rejected finally on account of a question as to Curtis' title to the yearlings, and the affidavit of one of the Curtis brothers to the effect that his firm was the owner of said yearlings. This was also objected to. The evidence was not competent, because it tended to contradict the written contract between the parties, and should have been excluded. The contract was definite and plain in its terms, and not ambiguous, and was not attacked by any pleading for fraud or mistake, but was relied on by both parties as the repository of their agreement. It was the duty of the court to declare the legal effect of the contract, from its terms, and they were too plain to admit of construction or explanation by oral evidence. They simply show an absolute sale of all the title and interest of Curtis in all the partnership stock of cattle, ranch, ranch outfit, etc., to Wilson, and, in addition to other considerations expressed, Wilson "agrees to deliver to said J. W. Curtis, on or before July 1, 1898, five thousand yearlings, one half of which are to be heifers and one half steers, * * * to be taken from the herd of Magnolia ranch, * * * and in the event there is not 5000 yearlings in said brand of said herd at the time of de-

livery, then said Curtis agrees to receive the branding of 1897 in lieu of said 5000 yearlings aforesaid, except the bull calves branded in 1897, in full satisfaction of said agreement to deliver same."

We think until this delivery was made, no title to the yearlings would pass to Curtis, and that the assessment of these 5000 yearlings against the Curtis brothers was void,—they belonged to Wilson, under the contract, until they were delivered to Curtis or his assignee.

It becomes unnecessary to decide whether the county of Borden could maintain this cross-action, and whether it was necessary for the appellees in their cross-petition to plead and on the trial to prove an order of the Commissioners Court directing the suit to be brought, as seems to be required by our statutes. 2 Sayles' Civ. Stats., art. 5212a.

For the error pointed out the judgment is reversed and is here rendered in favor of appellants.

*Reversed and rendered.*